Good morning, ladies and gentlemen. Our first case for this morning will be Gray v. Zatecky. Mr. Cutts. May it please the Court, Your Honors. Good morning. My name is Kyle Cutts, and I represent the petitioner, Kunta Kinte Gray. I'd like to begin by discussing Mr. Gray's request for tolling of the AEDPA statute of limitations, followed by the claim for ineffective assistance of counsel. The District Court erred here when it dismissed Mr. Gray's petition as untimely, without adequately considering the reasons Mr. Gray gave as to why tolling of the statute of limitations was warranted. After Mr. Gray filed his petition, the District Court issued an order to show cause as to why the petition should not be dismissed as untimely. You know, you rely in part on our Schmidt v. McCauley decision for the notion that Judge Barker should have convened an evidentiary hearing on the tolling question. But Mr. Gray is not mentally ill, a fact which we've said, quote, colors everything in the case. So what is it in his circumstance that might render this case so extraordinary as to warrant a hearing on the question of tolling? Do you think it's the particular, do you think it's the particular delays in getting his records? What, you know? Yes, Your Honor. It's the combination of circumstances, and the delay in getting the records is certainly a large portion of that. He was without his state court records for approximately four months. It took about four months for them to get there. The record also reflects that he was placed in lockdowns at times during the limitations period. See, none of that is all that unusual in these cases. But as Xochitl v. Broughton explains, Your Honor. Could you? Oh, I'm sorry. No. As Xochitl v. Broughton explains, Your Honor, the analysis for equitable tolling requires a consideration of the full picture of circumstances that impacted the petitioner's ability to timely file the petition. It does not permit the consideration of one or two factors in isolation, but requires that full picture approach. Here, it was the combination of the lack of access to the records, the lockdowns, and Mr. Gray's own pro se status that created the extraordinary circumstance that prevented him from timely filing. Let me ask you, does the record quantify either the extent of the lockdowns or limitations on Mr. Gray's access to wall libraries? It doesn't, Your Honor. It does or does not? It does not. Mr. Gray, in his briefing to the court, explained that lockdowns could last from a few days to weeks to a few months. But the record does not presently reflect how long any specific lockdown was during the limitations period. Why should we order the district judge to hold a hearing on matters that Mr. Gray presumably could have been able to enlighten us about in his petition? Well, this goes back to the question about Schmidt v. McCauley. Schmidt emphasizes the importance that counsel plays in assisting the petitioner to identify the relevant factual material that would support a claim for equitable tolling and present, quote, the best case for equitable tolling. Here, if the court determines that remand is appropriate, we would not only be able to develop additional factual allegations surrounding the lockdowns that occurred at the prison, but also identify that Mr. Gray was placed in segregation during a portion of the limitations period, which also impacted his ability to timely file his petition. And it's not just Schmidt v. McCauley. In Weddington v. Zetecky, Moore v. Battaglia, the court remanded to allow further factual findings where counsel was not represented below and where further factual development was necessary to make the equitable tolling determination. Of course, in SOCIA, the facts are much more extreme than they are, and there are more signs of diligence in SOCIA. And even if SOCIA is not the thing that demarcates the standard, on an all-the-circumstances point of view, that's important. And I would like your response also to your opponent's argument that you're focusing, it seems, more on the 108 or 109, whatever the right number is, days by which he's late. But there are a couple of points where the clock is running and at each of which he, in the state's view, failed to display the necessary diligence. He just kind of asks for the records and sits around and waits for them to come, then they come, and he's not pushing as the clock is ticking at those earlier times. Well, I think, turning first to your question about SOCIA, I think SOCIA benefits from a more developed factual record here. But the basis of Mr. Gray's claims are similar to SOCIA. In SOCIA, the determination turned on SOCIA's placement in segregation, his lack of access to vital records for much of the limitations period, and also his pro se status. Those are similar to the claims that Mr. Gray is seeking to develop here if the court determines that the record on its current face does not satisfy equitable tolling. But SOCIA asks repeatedly, though, for the records. He's practically pestering, which I guess is fine. I mean, sometimes you have to nag, right? And I thought that there was also a better communication with the court there. But I'm really more interested in the fact that during the 113 days he's waiting for the courts to follow through, what's he doing to advance his case? Well, I think the answer is, Your Honor, that the record, as it currently stands, doesn't fully explain what he's doing. And that's one of the things we benefit from, from further factual proceedings before the district court. But he doesn't make any allegation that he's asking the warden every third day or that he's doing anything. We just have silence. Not on the present record. I would say, however, with respect to reasonable diligence, he does file a motion on his own with the Indiana courts for his records. Once he received those records, he goes about diligently preparing a petition for state post-conviction relief, which he files on his own without the assistance of counsel. Thereafter, once that petition is denied, he petitions the state public defender's office, who had represented him throughout the post-conviction proceeding, for his records. That takes about 45 to 60 days to get back to him, after which he diligently prepares a detailed federal petition for relief and files it. Did he have those records before the statute ran out? Did he have the post-conviction? I'm focusing on the second request. I believe he did, Your Honor. I believe those records arrived to him before the expiration of the statute. And they were, I can't remember, you indicate that they were relatively voluminous? That's correct, Your Honor. Furthermore, upon receiving those records, one of the things that we developed, though, is although I believe he did receive those records before the limitations period runs out, one of the areas that the record does not reflect that we would like to develop in further factual proceedings, if they're determined necessary, is that Mr. Gray was placed in administrative segregation for a portion of the limitations period. And, in fact, it appears that he was placed in segregation from October 2012 to January 2013. Now, the state alleges that the statute expired in January 2013, around the time he came out of administrative segregation. So these would be important factual details that would further support his claim for equitable tolling of the statute limitations and demonstrate his reasonable diligence throughout the process. When he's in segregation, does he have access to the law library, or is he completely excluded? My understanding, Your Honor, is that there is no access to the law library. The materials may be requested, but that they're very inconsistent. And when the person who delivers the materials is not in the prison, nothing gets delivered. But these are the types of facts we've developed further below with the benefit of an evidentiary hearing. Could we talk for a moment about the ineffectiveness of the alleged ineffectiveness of trial counsel? Absolutely. I mean, I take it you would concede that trial counsel had a legitimate need to impeach Mr. White's credibility? He had a- Yeah. So if you could spend a moment laying out what Mr. White was able to accomplish in terms of impeachment, apart from Mr. Gray's robbery of him. It appears to me that the trial judge hampered the impeachment by some degree by keeping out the chronological case summary. And the letter to the prosecutors that White had written. So I'm curious to what extent you think the impeachment was otherwise sufficient without delving into that bad history between the two. Well, counsel laid out his strategy for impeaching White. It involved those three things you identified. And to some degree, he was successful on each one. Most notably, he was successful in having White testify that he didn't like Gray very much without needing to delve into the robbery at all. In fact, he didn't need to bring up that testimony at all in order to get White to testify that he didn't like Gray very much because White knew the victim. I know, but if he had said, you didn't like him, they didn't like each other. That would not open the door for the government to say, you know, well, what's the history behind that? And it would have come out that way. I don't believe so, Your Honor, because Mr. White gave a reason for why he didn't like Mr. Gray at the time. And that was because he knew the victim in this case. And so it really provided its own explanation without going into the details of the robbery. But independent from that testimony, Your Honor, Mr. Gray's trial counsel was to a degree successful in calling into question the timing of when the alleged conversation between White and Mr. Gray occurred. He wasn't able to have the court take judicial notice of the timesheets. However, he was able to get some of that testimony out. And he was able to get some testimony out that White had sought consideration from the court before whom he was receiving sentencing, although he wasn't able to get the letter in itself. So he had established three different reasons, although not to the degree he may have wanted to. But he had established three reasons for the jury to discount White's testimony. His decision, however, to elicit the damaging testimony completely torpedoed the overall strategy he had put in place. The defense's theory of the case was that Mr. Gray had approached the eventual victim of the crime earlier in the day about buying drugs. It was their theory that he was not the person that returned later in the day and robbed and murdered the victim. It was therefore critical for the jury to understand that Mr. Gray, although he might have been interested in purchasing drugs, was not a violent person, was not the kind of person who would go back to somebody's residence and arm them and kill them. But Gray's trial counsel torpedoed that strategy, that overall defense strategy, when he elicited the damaging testimony. Indeed, he put some of the worst testimony within the witness's mouth during the questioning. And if I may, I'd like to read one of the questions because I think it shows how damaging this testimony really was. And it came from Mr. Gray's trial counsel in large part. And so having been one of Mr. Gray's victims and having had him rob you or attempt to rob you and wave a gun around in your face and steal your goods or belongings or marijuana or money or whatever it was that you told Detective Tudor that he stole, you hated Mr. Gray, didn't you? Gray's trial counsel doesn't even know all the facts behind this alleged robbery, but he's feeding the worst facts to the witness. In addition, we'd note that although Mr. Gray's trial counsel did not raise this testimony in his closing statement, although he would later testify at the post-conviction hearing that this testimony was incredibly important to this case, the prosecution exploited this testimony, asking the jury to draw comparisons between the previous crime and the alleged robbery, saying that's what Mr. Gray does. He robs people. I see I'm running short on time. If there are any other questions, I'll reserve the remainder. Thank you very much. That would be fine. Thank you. Ms. Loy. Good morning, Your Honors. May it please the court. The district court did not abuse its discretion in denying Mr. Gray's petition for untimeliness. He had three opportunities to present sufficient allegations and also evidence of extraordinary circumstances and diligence. Is it your position that four-plus months of delay in producing his records to him would never be sufficient to qualify for tolling? I think it depends on the circumstances. In this case, it is completely different from the case presented by Socha. And, in fact, Mr. Gray was pursuing the ordinary, normal course of obtaining the state court records through the Court of Appeals, who then appoints a state public defender who has 90 days to do so to get the record, to copy it, and to then give it to the petitioner. Why doesn't that show that this was utterly beyond his control? He's doing what he needs to do. He doesn't have counsel, so there's no source of the records otherwise. And what worries me about the state's position is that you're really encouraging one of two possibilities. Possibility number one, everybody should be advised as soon as their direct appeal is over that they should just throw a 2254 into the hopper and ask that it be stayed pending the exhaustion of any further state remedies that may exist to avoid this. Or, possibility number two, that people should just file frivolous and unsubstantiated 2254 petitions because otherwise they're going to be stuck with this one-year limitations problem with no ability to show that it's not that they had all the records sitting in their prison cell and they just didn't get around to filing a petition. It's that the Indiana public authorities, the courts themselves, were rather slow in responding to his requests. It's a bad solution any way you look at it. I disagree, Your Honor. The solution is a responsive course that both the court and the public defender's office has taken in order to accommodate a petitioner who is in jail and unable to get the record himself. But how did that work here? It didn't work at all for Mr. Gray. Oh, I disagree, Your Honor. It did work. It produced the record. He got what he received. It was timely. And it allowed him to file his petition for post-conviction review. But then the clock is ticking. In the post-conviction review, there's another delay after that in getting further records, and he's stuck in administrative confinement. It's difficult even for a responsible lawyer to wade through all of the records that have accumulated to navigate these issues of what's been properly presented, what hasn't been presented, what claims can be brought forward. I just think you're asking the impossible, and the alternative is these two different types of protective filings that I am imagining. No, Your Honor. He has to show that there isn't any additional time for him to come into compliance with the statute of limitations. Well, and so all he could have done is filed something the minute he gets the records without reading a single one and squeezing in under this, whatever it was, January 11, 2013 timeframe. You're asking him to do something irresponsible. Not necessarily, Your Honor. He has a full year. In his case, you are. And he has a full year in order to come into compliance. He didn't, though. The time had already been eaten away because countable days had happened before he files his state post-conviction. You would certainly agree with that. And countable days are happening while he's waiting for the state courts to send the records to him. So he has nothing close to a year. He has days, and he's not able to access the records because of the administrative confinement. So you want him to file a 2254 petition basically in violation of Rule 11 with no ability to read through the record and craft the right kind of petition. Well, after he has filed a petition for post-conviction relief, which he did in this case when he received the record from the state public defender's office, and that is completed, he has already his claims in order to present it to the federal district court because he can only present claims that were already presented in the state court. But some of those might be based in the trial. Some of those might be based in the state post-conviction. Of course, one of his claims is a Batson claim. One of his claims relates back to the effectiveness of counsel. And so, yes, of course, you've got to present to the post-conviction. But in your view, the record from the state post-conviction is either of no relevance whatsoever, so he shouldn't have even bothered to ask for it to begin with, which strikes me as irresponsible, or you think that he should just file something without reviewing it because it was impossible for him to review it. You know, you really are asking him to fly without a net. Given his pro se status, the record intensive nature of his claims, the relative complexity of some of his claims, what I'm wondering about is why he wasn't at least entitled to a hearing on his tolling arguments. He was given an opportunity, and an evidentiary hearing is not the only way to present evidence and get it before the district court to support his allegations. His allegations were very general and, again, were very ordinary to any prisoner, which this court has recognized in SOCIA does not present the extraordinary circumstances that is the basis of an equitable tolling claim. It's a very high burden, and Mr. Gray's case is very different from that in SOCIA. And what this court found to be significant in SOCIA is that he asked the court before the deadline, before the statute of limitations expired, told the court that he was having difficulty and asked for extension of time. But that's not contested here, is it? I mean, it's nice to tell the court, but if nobody's arguing that the delay was, in significant part, because of the length of time it took the court of appeals to send the record to him, which I don't think anyone is contesting, what's that extra fact? I mean, nothing in SOCIA says this is the only way to get equitable tolling. Equitable tolling is very fact-dependent, as Holland recognizes, as SOCIA recognizes. But there are very few cases, and so should there be, that prisoners have achieved either showing equitable tolling or showing that there is more evidence that can be presented. Here, Mr. Gray actually filed, before he filed his habeas petition, he filed in the trial court in April of 2013 petitions to modify his jail credit, and he also filed a memorandum of law to support that. It was already too late by then, though, so I don't know why that matters. But it shows a lack of diligence, which is something that Mr. Gray also needs to show, not only extraordinary circumstances but also diligence. So I think the only way people get around this, I'm just thinking structurally, the only way people get around this is they should just file with no review of the record. Just a placeholder? Just a placeholder. Ask the district court, you know, please stay. This may turn into something or may not, but I'm faced with this one-year limitations period, and I don't want to be met with the same kind of argument that you're making here. So that's what I'm going to do. That's one possible route, or a person can show that there are extraordinary circumstances. Why is the state better off if that's what people start doing? Why does that help the state? You'll have to double the amount of trial lawyers. In the district court? It actually would not involve the state, because the district court would first have to go through the Rule 4 screening function, or the court may decide to appoint somebody to represent the respondent. Whether it helps the state or doesn't help the case is not the question here, Your Honor. Mr. Soch's extraordinary circumstances in not being able to get his file for over a year was due to what the court recognized as being misconduct by the attorney, because he was not giving the record which Soch was entitled to and which he repeatedly and emphatically asked for. That is far from the facts that we have here. What we have is Mr. Gray going through the ordinary course, the court being responsive to his requesting the transcript, and that was done. A petitioner has a full year in order to meeting usual circumstances that may delay, but that doesn't meet the high burden. How many days did he have after he received the records from this post-conviction proceeding? He had over eight months, I believe, if my calculations are correct. There were four months in asking for the records and receiving them. No, he didn't, because his conviction becomes final January 2, 2008. He doesn't do anything with state post-conviction until July of 2008. So those days all count toward the year. But he had the transcript. I'm trying to focus on how many days does he have left for the filing, to absorb the records, after he gets the post-conviction. Correct. There were four months that were taken up in receiving the post-conviction records. 156 days left at the time the post-conviction relief becomes final, but that's when he asks for the records. So lots of those 156 days are eaten up by him waiting for the record to come. And I want to know how many days does he have after he gets the record. I'm sorry, the second time he receives the record? The second. Because he said even a counsel agreed this morning that he already had the transcript from the trial when he requested his file from his attorney following the denial of post-conviction relief. The question is, when did he get the PCR record, and then when did the federal filing deadline apply? Right. Mr. Gray does not disclose when he received the record or his file. I thought he said, I'll have to go back and look at this, I thought he said it took, it says he petitioned the Indiana Court of Appeals for his records. This is the first time, so he could file a petition for state post-conviction, took them over a month to rule on that request, another two months to release. He gets four months, and then after the post-conviction appeal, he asks for the records, and actually I don't see where I'm looking right now how long that takes, but it takes some amount of time. He does not have anywhere near eight months after he gets the PCR records. If he'd gotten them the next day, he only would have had 150-some days. If I could just refer you, Your Honor, to document 11, which is his supplement to the court's order to show cause, paragraph 17, number paragraph 17. He just simply says that it caused considerable delay after he requested his record from the state post-conviction attorney, but he doesn't give any kind of specificities, and this is true throughout his pleadings. In fact, his first reason for being untimely was due to the lack of getting the direct appeal record. I'm sorry, I take that back. It was because he was changed from facility to facility. He then abandoned that reason in his supplement, and that's where he relays that he was on lockdown, that he had delay in getting his file from the post-conviction attorney. He also goes on, though, in his traverse to then abandon those reasons, and he sticks to the fact that there was a delay, a four-month delay, in getting the transcript from the trial. So the reasons about lockdown being in segregation, he abandons those reasons, which is the second time he's fluctuated in why he was not able to file a timely response. Okay, so before you sit down, I would like you to address a bit of counsel's cross-examination of White, because it may be the worst example of cross-examination I've ever seen, and the excerpt that Mr. Cutts read is pretty shocking. Your Honor, the decision to reveal that Mr. White and Mr. Gray had a longstanding, deep-rooted hatred for each other and were enemies not only shores up his initial attack on Mr. White, that there was little to no opportunity for this conversation to take place, but it is not... And it certainly shored up your closing argument. Well, it presented, though, again, Mr. White was a vital witness that needed to be impeached, and Attorney Gray... But the judge really handcuffed... He had many arrows in his quiver, and there were two other arrows that he tried to use that were diffused by the trial court, and he found it imperative that he had to impeach Mr. White. He had impeached Mr. White. You're saying that he needed to impeach Mr. White in a way that served the case up on a silver platter to the prosecution. No, this is the epitome of a strategic decision where he knows the risks... It's a blunder. ...and he believes that he needs to attack Mr. White because if they believe Mr. White, then they're going to believe what he said about Mr. Gray and being a victim of Mr. Gray's attempted robbery of him. So whether they're going to believe Mr. White or not hinges on how much they believe that there was little opportunity for Mr. Gray, who is an enemy of Mr. White, to suddenly confess to him. So it's very consistent. It shores with his other reasons for impeaching Mr. White. It shores them up. And, again, it's not about that this actually happened. It was never presented to the jury that he was act... I'm sorry, that Mr. White was actually robbed by Mr. Gray. But, in fact, it's what Mr. White said to the police, which is highly improbable, and that was the argument of counsel. Could I just quickly ask, do we have the full original state court trial record and PCR record in our records? I have to answer that yes and no. The voir dire was never transcribed from the direct appeal, so it was never made part of the record. So other than that, yes, this court should have the full record. But not the transcript of voir dire. Correct. Thank you. Thank you. Thank you. I think you have about a minute left, Mr. Cutts. Thank you, Your Honor. First of all, Mr. Gray did not abandon his search for equitable tolling based on prison lockdowns, inadequate access to the trial record, and his pro se conviction and his traverse to the court. Rather, he was responding to the state's arguments. With respect to the question of whether the record discloses at this point how much time the record took to get to him so he could file his federal petition, he stated that it took considerable delay. The record does not now reflect how much time that is, but that is something that we would explore with the opportunity of an evidentiary hearing. With the request of the question about the record, it could be that counsel and I are talking about different things, but a transcription of the voir dire of the jury placement, I believe, is in the record, and a portion of which was filed with our appendix. A portion, yes. A portion, which the full record, I believe, is available in the CDs that I supplemented the record with. If there are no further questions, thank you so much. Thank you. All right. Thank you very much. And if I'm not mistaken, were you and your firm recruited to handle this case? We appreciate your efforts very much. On behalf of your client and the court, thanks as well to the state. We will take the case under advisement.